WILBUR M. MOUNSEY vs. ROBERT P. ELLARD & another.

Middlesex. February 6, 1973. — June 6, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Negligence*, One owning or controlling real estate, Invited person, Licensee, Public official.

Review of authorities dealing with the distinction between invitees and licensees upon land in determining the duty of the owner or occupier toward them. [695–706]

The distinction between an invitee and a licensee is no longer to be observed in determining the duty of an owner or occupier of land toward an entrant thereon; instead, the owner or occupier has a single duty to entrants lawfully on the land of using reasonable care in all the circumstances [706–709]; and a police officer who went to premises to serve a criminal summons could recover from the owners of the premises for injuries sustained in falling on ice there if the owners were guilty of ordinary negligence in failing to use such care in the maintenance of the premises or in not warning the officer of the presence of the ice [709–710]; QUIRICO and REARDON, JJ., were of opinion that the decision should be limited to holding that the officer was an invitee on the premises to whom the landowners would be liable for ordinary negligence [711–713, 715–717]; KAPLAN, J., questioned an intimation in the majority opinion that there should continue to be a distinction between trespassers on land and entrants lawfully thereon in determining the duty of the owner or occupier [717–718].

TORT. Writ in the Superior Court date September 11, 1967.

The action was tried before *Travers*, J.

*Joseph J. Padellaro* for the plaintiff.

*Walter G. Murphy* for the defendants.

TAURO, C.J. This is an action in tort brought by the plaintiff to recover for personal injuries sustained when he fell on an accumulation of ice on the defendants' premises. The plaintiff's declaration in six counts alleges negligence, gross negligence, and wilful, wanton or reckless conduct by the coöwners of the premises. The case is here on the plaintiff's exceptions to the direction of

verdicts for the defendants on all counts after the plaintiff's opening statement to the jury.

The pertinent facts, as stated in the opening, are as follows. The plaintiff, a police officer in the town of Concord, was acting in his official capacity at the time he was injured on the defendants' premises. On January 20, 1967, at approximately 5:30 P.M. the plaintiff was directed by a superior officer to serve a criminal summons for a parking violation on one of the defendants. After locating the defendants' home, the plaintiff entered upon their premises from the driveway, delivered the summons at the door, and then was injured when he fell on an accumulation of ice on his way out.

Since the plaintiff's opening statement to the jury was devoid of any facts which would have warranted a jury finding of gross negligence or wilful, wanton or reckless conduct, the trial judge properly allowed the defendants' motion for directed verdicts as to counts 2, 3, 5 and 6. Viewed in the light most favorable to the plaintiff, his opening states that there were defects in the drainage system that the defendants failed to repair. A failure to repair such defects which resulted in an accumulation of ice may constitute negligence but such conduct does not "[display] the criminal or quasi criminal quality involved in wilful, wanton or reckless conduct." *Carroll* v. *Hemenway*, 315 Mass. 45, 47.

Therefore, the only remaining question before us is whether the trial judge properly allowed the defendants' motion for directed verdicts as to the plaintiff's counts 1 and 4 alleging ordinary negligence. The judge's decision was based on our common law rule that classifies policemen and firemen as licensees who must establish wilful, wanton or reckless conduct, and not just ordinary negligence, on the defendant's part in order to recover for injuries sustained during their performance of official duty on the defendant's land. *Brosnan* v. *Koufman*, 294 Mass. 495, 501. *Wynn* v. *Sullivan*, 294 Mass. 562, 564. *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344. The plaintiff asks us to abandon this artificial classification

of public employees as licensees in favor of a rule which would treat public employees, such as policemen and firemen, as a *sui generis* class to whom the landowner or occupier of land owes an affirmative duty of reasonable care to keep his premises safe when these public employees enter upon the defendant's land in their official capacity and in the performance of their public duties. The plaintiff's challenge to the common law's classification of policemen who enter upon private property as mere licensees has led us to reconsider the historical sources, justifications, and efficacy of the common law's general licensee-invitee distinction.

Our common law places those who enter upon land in three fixed categories: trespassers, licensees, and invitees. These three categories "make out, as a general pattern, a rough sliding scale, by which, as the legal status of the visitor improves, the possessor of the land owes him more of an obligation of protection." Prosser, Torts (4th ed.) § 58, p. 357. These categories were developed in English common law at a time when the law attached supreme importance to a landowner's property interests. See Bohlen, Fifty Years of Torts, 50 Harv. L. Rev. 725. The feudal conception that the landowner was a sovereign within his own boundaries provided the justification for a line of decisions that predicated the existence and distinguished the degree of a landowner's liability for injuries occurring on his land on the type of relationship existing between the landowner and the injured party.

In *Sweeny* v. *Old Colony & Newport R.R.* 10 Allen 368, 372, this court outlined the common law's approach to the problem of balancing the interests of the occupier against the interests of a person entering upon the premises. "In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests."

Chief Justice Bigelow stated the court's view as to why

occupiers or owners of land owed a duty of reasonable care to keep their premises safe only for their invitees. Since trespassers enter the occupier's land without right, they cannot maintain an action based on a claim of negligence because "[t]he owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon. . . . A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used." Pp. 372–374.

In light of the supreme importance which our early common law attached to property interests, it is understandable that the occupier's interests were favored over the licensee's by the creation of a rule that the only duty

an occupier owed a licensee was not to inflict wilful or wanton injury on him. The distinctions drawn by the *Sweeny* case, *supra*, between licensees and invitees reflected the English common law rule's reasoning that a landowner should be bound to a duty of reasonable care only in those cases where he had invited the visit for his own purposes. The landowner's passive acquiescence to a licensee's entrance for the licensee's "own convenience and pleasure," the *Sweeny* case, p. 373, did not impose a duty of reasonable care on the landowner because the landowner did not benefit from the licensee's visit or induce it by creating the appearance that visitors "might properly and safely enter thereon."

One serious problem raised by the common law's rigid division of the status of all persons entering upon land of another into these three classes of trespassers, licensees, and invitees is the difficulty courts encounter in distinguishing between these latter two categories in dealing with public employees or officials who enter private property by way of a legal privilege that is not conferred by or dependent upon the occupier's consent. The difficulty of placing such official visits by public employees and officials in one of the three categories established by the common law is reflected in this court's first decisions on the subject.

In *Parker* v. *Barnard*, 135 Mass. 116, this court noted that public servants acting for the public welfare "[a]s individuals may thus enter upon the land of another, firemen may do so for the protection of property, officers of the law for similar purposes, and, under proper circumstances, for the arrest of offenders or the execution of criminal process. The right to do this may be in limitation of the more general right of property which the owner has, but it is for his protection and that of the public. *Metallic Compression Casting Co.* v. *Fitchburg Railroad*, 109 Mass. 277, 280. *Hyde Park* v. *Gay*, 120 Mass. 589, 593. *Commonwealth* v. *Tobin*, 108 Mass. 426. *Commonwealth* v. *Reynolds*, 120 Mass. 190. *Barnard* v. *Bartlett*, 10 Cush. 501." P. 117. Thus, when a police

officer enters another's land to perform a lawful duty "a license so to do is fairly implied, which, *at least,* should shield him from being treated as a trespasser" (emphasis supplied). P. 117.

However, the court declined to determine the police officer's exact status under the common law. The defendants had argued that the plaintiff police officer "was no more than . . . [a licensee]; he was there at his own risk; and that none of the defendants were under any obligation towards him to keep this entrance or the building in a safe condition." Pp. 117–118. However, the court found it unnecessary to decide this point because of its holding that the plaintiff's injury "proceeded from the neglect of an obligation imposed upon the defendants by statute." P. 118. The court concluded that "even if they are but licensees" (p. 118), "they may demand, as against the owners or occupants, that they observe the statute in the construction and management of their building." P. 120.

In *Learoyd* v. *Godfrey,* 138 Mass. 315, we upheld a police officer's right to recover in tort for injuries resulting from a fall into an open hole in an outside passageway to an apartment. Although the plaintiff had been asked to come to the tenement house by one of the tenants, Justice Holmes rested the court's decision on the fact that the plaintiff had made a lawful entry by a passageway which "from the appearance of the premises . . . [was] the intended mode of approach to the tenement in question." P. 323. Since the location of the place of injury was a route prepared as a means of access to the premises, any person who had a right to enter the premises used the passageway "by the defendant's invitation" because of its appearance as "the intended mode of approach." P. 323.

The *Learoyd* case established a public employee's or official's right to recover whenever he is injured by the negligence of the owner in failing to keep the route of access to his premises in a reasonably safe condition for those using it as it was intended to be used. This court's

willingness to find that public employees were impliedly
invited to enter upon private property in performance
of their official duties was further evidenced by our hold-
ings in *Toomey* v. *Sanborn*, 146 Mass. 28, *Gordon* v. *Cum-
mings*, 152 Mass. 513, and *Finnegan* v. *Fall River Gas
Works Co*. 159 Mass. 311.

In the *Toomey* case, *supra*, the court held that since a
city trash collector was lawfully using the passageway at
the implied invitation of the owner, he could recover for
injuries caused by the occupier's failure to keep the back
entrance to his premises in a reasonably safe condition.
The court said, "There was evidence that the passageway
had been constructed and was maintained for the pur-
pose, among other things, of affording a back entrance to
the house, and was, as the defendant knew, constantly
used by the servants of the city of Boston for the purpose
of removing the ashes and offal from the house, and that
the plaintiff, as such servant, was rightfully using the
passageway on the implied invitation of both the owner
and occupant of the house for this purpose." P. 33.

In *Gordon* v. *Cummings*, *supra*, we held that a letter
carrier, who was injured while attempting to deliver mail
to tenants in the building, was an implied invitee. "While
the building was intended for workshops . . . it was still
one where, to some extent at least, the tenants received
letters, and there was a preparation and adaptation of
the entry, or hallway, for the plaintiff's use which might
well lead him to believe that he could safely enter in the
performance of his duty." P. 515. Finally, in the
*Finnegan* case, *supra*, Justice Holmes, speaking for the
court, ruled that a water meter reader was an invitee
because "it appears that the defendant, by taking water,
voluntarily entered into a relation, the result of which,
as it knew, was to require some one to enter its premises
in order to read the water meter. It was bound to use
reasonable care to prevent the place thus necessarily en-
tered by the deceased from being a death trap." P. 312.

We think that the *Learoyd*, *Toomey* and *Gordon* cases
provide ample authority for holding in the instant case

that the plaintiff was an implied invitee to whom the defendants owed a duty of reasonable care to keep the route of access to their premises in reasonably safe condition. It seems logical to contend that if the trashman and mailman can rely on the appearance of safety of an intended mode of approach which they necessarily use in the performance of their official duties, the police officer should be afforded the same right. At the very least, these three cases have established the occupier's and landowner's obligation to keep the access routes to his house in reasonably safe condition for those who are required to use them in the performance of their official duties. The mere fact that a policeman rather than a mailman delivered the criminal summons should not affect the standard of care owed by the occupier or owner. Thus, we could rest our decision in the instant case on the narrow ground that the plaintiff was an implied invitee to whom the defendants owed a duty to keep the route of access to their premises in reasonably safe condition.[1]

---

[1] The cases on which the defendants rely for support of their argument that the policeman is a licensee to whom the occupier owes no duty of reasonable care are subject to serious challenge. Both *Brosnan* v. *Koufman*, 294 Mass. 495, 501, and *Wynn* v. *Sullivan*, 294 Mass. 562, 564, contain dictum that a police officer who enters upon private premises in the performance of his official duty is a licensee. Although the *Brosnan* case did not involve a police officer, the court noted that "[w]here firemen or policemen have a legal right to enter premises in the performance of their duty — and while in such performance of duty they cannot be forbidden entry by the owner or occupant — the legal authority to enter, at least in the absence of a statute concerning the maintenance of the premises, does no more than create a status of licensee, and no duty of care is owed by the owner to those so entering. *Parker* v. *Barnard*, 135 Mass. 116, 117. *Brennan* v. *Keene*, 237 Mass. 556, 561." P. 501. However, as we have already noted, this court declined to determine whether the police officer was anything more than a licensee in the *Parker* case, *supra*. Moreover, the court's decision in the *Brennan* case that the plaintiff police officer was a licensee rested on its narrow interpretation of the plaintiff's official duties and its conclusion that there was no evidence that the plaintiff was injured while acting in accordance with those official duties. Our interpretation of the holding in the *Brennan* case significantly reduces the authority it lends to later cases which suggest that the policeman (and fireman) is no more than a licensee when he enters upon private premises in performance of his official duties. *Wynn* v. *Sullivan*, 294 Mass. 562, can be distinguished on its facts because the court in that case held that "[t]here was here no general invitation arising from the condition of the premises or from

Such a decision would be in accord with those of other State courts which have relied on slight variations of circumstances to find that an injured firman was an invitee instead of a licensee (*Clinkscales* v. *Mundkoski*, 183 Okla. 12) or a "business invitee" to whom the occupier owed a duty of reasonable care to keep the premises safe (*Zuercher* v. *Northern Jobbing Co.* 243 Minn. 166). This approach underscores the courts' underlying difficulties with the licensee classification which unduly favors the landowner's interests over the individual citizen's interest as to his personal safety. The history of the law on the subject of landowners and "licensees" indicates that many courts have broadened the invitee category to avoid the harshness of the licensee rule which no longer conforms to public opinion.

"Like so many cases in which a barbaric formula has been retained, its content has been so modified by interpretation as to remove much of its inhumanity." Bohlen, Fifty Years of Torts, 50 Harv. L. Rev. 725, 740. Thus, many courts have avoided the harsh implications of the licensee rule by holding that certain types of public employees who are required to enter on a person's property in the performance of their duties are invitees. See *Swift & Co.* v. *Schuster*, 192 F. 2d 615 (10th Cir.) (meat inspector); *Fred Howland, Inc.* v. *Morris*, 143 Fla. 189 (building inspector); *Anderson & Nelson Distilleries Co.* v. *Hair*, 103 Ky. 196 (United States revenue officer); *Jennings* v. *Industrial Paper Stock Co.* 248 S. W. 2d 43 (Ct. App. Mo.) (public health inspector); *Morgan* v. *Renehan-Akers Co. Inc.* 126 Vt. 494 (inspector of weights and measures); *Cameron* v. *Abatiell*, 127 Vt. 111; 65 C. J. S., Negligence, § 63; 38 Am. Jur., Negligence, § 123, n. 14, § 126. Cf. Restatement 2d: Torts, § 345.

The problem with this judicial approach is that it perpetuates the illogical legal fiction that a public employee

conduct of the defendant himself, to use the alleyway as the regular means of approach to the building such as was found in *Learoyd* v. *Godfrey*, 138 Mass. 315, and in *Gordon* v. *Cummings*, 152 Mass. 513." P. 564.

or official, who enters upon private property by way of legal privilege in performance of his official duties, can be classified as either a licensee or an invitee. Public employees should not be labeled licensees because they do not act for their "own convenience and pleasure," *Sweeny* v. *Old Colony & Newport R.R.* 10 Allen 368, 373, when they enter upon another's land. They are not invitees because the occupier or owner does not have the freedom of choice to admit or exclude them which is ordinarily considered an essential element of the invitee classification. See Prosser, Torts (4th ed.) § 61, p. 396; Harper and James, Torts, § 27.14 p. 1500. We agree with Prosser's view that public employees or officials "do not fit very well into any of the arbitrary categories which the law has established for the classification of visitors. They are not trespassers, since they are privileged to come. The privilege is independent of any permission, consent or license of the occupier, and they would be privileged to enter, and would insist upon doing so, even if he made active objection. They normally do not come for any of the purposes for which the premises are held open to the public, and frequently, upon private premises, they do not enter for any benefit of the occupier, or under circumstances which justify any expectation that the place has been prepared to receive them." Prosser, Torts (4th ed.) § 61, p. 396. We think it is illogical to say that the plaintiff in this case, who entered the defendants' premises quite independently of either invitation or consent, cannot be an invitee because there has been no invitation, but can be a licensee even though there has been no permission. This reasoning has led some courts to treat policemen and firemen as neither licensees nor invitees but as a sui generis class (*Buren* v. *Midwest Indus. Inc.* 380 S. W. 2d 96 [Ct. App. Ky.]; *Krauth* v. *Geller,* 31 N. J. 270; *Spencer* v. *B. P. John Furniture Corp.* 255 Ore. 359) to which the occupier or owner owes a duty to keep his premises in reasonably safe condition. *Dini* v. *Naiditch,* 20 Ill. 2d 406. *Meiers* v. *Fred Koch Brewery,* 229 N. Y. 10. *Beedenbender* v. *Midtown Prop-*

*erties, Inc.* 4 App. Div. 2d (N. Y.) 276. See Prosser, Torts (4th ed.) § 61, p. 398; Harper and James, Torts, §§ 27.1–27.14, pp. 1430–1503.

The difficulty with both the "sui generis" [2] and "implied invitee" cases is that they mitigate some of the results produced by the licensee rule without eliminating the rule itself. Instead of challenging the efficacy of a classification that establishes immunities from liability which no longer comport with modern accepted values and common experience, many courts have carved out special exceptions to the licensee rule or made procrustean efforts to fit the circumstances of contemporary life into this archaic and rigid classification system.

The United States Supreme Court, in an admiralty case dealing with a shipowner's duty to those aboard his vessel, discussed the diminished viability of the common law's approach to possessor's liability. In supporting its decision not to import the licensee-invitee distinction into admiralty law, the court noted that "[t]he distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. . . . [T]he classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured." *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625, 630–631.

A review of our own decisions in this area supports the

[2] We think the sui generis rule is too restrictive in its application when it limits defendants' responsibility to areas of common access. See *Meiers* v. *Fred Koch Brewery*, 299 N. Y. 10; *Beedenbender* v. *Midtown Properties, Inc.* 4 App. Div. 2d (N. Y.) 276.

Supreme Court's conclusion that the application of the licensee-invitee distinction in the modern context has "produced confusion and conflict." *Kermarec* v. *Compagnie Generale Transatlantique, supra.* Although our early decisions seemed to indicate that the proper test of invitee status was the assurance of safety implicit in the act of invitation itself,[3] later decisions seemed to adopt the "economic benefit" theory which predicated invitee status on the potential economic benefit the occupier may derive from the visitor's presence.[4] But the economic benefit theory has not been consistently applied and cannot be used to explain decisions like *Pope* v. *Willow Garages Inc.* 274 Mass. 440, and *Kelley* v. *Goldberg,* 288 Mass. 79, where the plaintiffs were treated as invitees despite the fact that there was no mutuality of economic interest between the plaintiffs and the defendants in those cases. These decisions seem to rest on the invitation rationale that the occupier's duty of reasonable care is not based on any mutuality of economic interest between the plaintiff and the defendant but on an implied representation that, when an owner or occupier encourages others to enter to further a purpose of his own, reasonable care must be exercised to make the place safe for those visitors whose presence is directly or indirectly connected to that purpose.

---

[3] See the *Sweeny* case, 10 Allen 368, and *Davis* v. *Central Congregational Soc. of Jamaica Plain,* 129 Mass. 367, where the court held that a person attending a church meeting was an invitee. "The application of the rules on which the defendant's liability depends is not affected by the consideration that this is a religious society, and that the plaintiff came solely for her own benefit or gratification. It makes no difference that no pecuniary profit or other benefit was received or expected by the society. The fact that the plaintiff comes by invitation is enough to impose on the defendant the duty [of reasonable care] which lies at the foundation of this liability. . . ." P. 372. *Contra, Holiday* v. *First Parish Church of Groton,* 339 Mass. 692.

[4] See *Plummer* v. *Dill,* 156 Mass. 426; *Zaia* v. *"Italia" Societa Anonyma di Navigazione,* 324 Mass. 547, 549 ("There must be a real or apparent intent on the part of the invitor to benefit in a business or commercial sense and an intent on the part of the invitee to enter upon the premises for a purpose consistent with that of the invitor as evidenced by the invitation. *Plummer* v. *Dill,* 156 Mass. 426, 427"). See also Restatement: Torts, §§ 332, 343, comment a (1934).

However, this broadened invitation rationale, which represents the majority view according to Prosser, does not explain why social guests expressly invited by the occupier are considered licensees in most jurisdictions including our own. Under our case law, the plaintiff acquires invitee status by "conferring a benefit in the performance of something in which the defendant has an interest provided the benefit is other than 'those intangible advantages arising from mere social intercourse.'" *Taylor* v. *Goldstein,* 329 Mass. 161, 165. A "member of a family or household group or group of acquaintances rendering friendly help in household routine or commonplace tasks to another member of the group does not cease to be a licensee or social visitor *unless the character or circumstances of the assistance make it clearly the dominant aspect of the relationship rather than a routine incident of social or group activities"* (emphasis supplied). *Pandiscio* v. *Bowen,* 342 Mass. 435, 437–438.

Not surprisingly, this court's application of the *Pandiscio* test has produced a series of confusing and often inconsistent results in cases with similar fact patterns. Thus, in *O'Brien* v. *Myers,* 354 Mass. 131, we held that the plaintiff was merely a social guest when she went to her sister's house to help dispose of their deceased aunt's effects, but in *Rollins* v. *Marengo,* 354 Mass. 765, decided about two months later, we held that the plaintiff, who was visiting "for the purpose of being the godmother of the defendants' two-week old baby and to take the baby from the [defendants'] home to the church to be baptized," was an invitee. Compare *Colbert* v. *Ricker,* 314 Mass. 138, with *Huska* v. *Clement,* 361 Mass. 522, 523–524. Moreover, since the dominant purpose of the entrant's visit may change during the visit, courts are also confronted with the difficult problem of determining when the change in status takes place. See *Pereira* v. *Gloucester Community Pier Assn. Inc.* 318 Mass. 391 (one who comes upon premises as a business visitor becomes a licensee if he continues to remain in the premises after

his business is concluded), and *Tomaino* v. *Newman*, 348 Mass. 433 (social guest in automobile may become an invitee when the defendant requests the guest to remain and render assistance after the automobile has broken down).

Admittedly, such "[c]omplexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations," but the licensee-invitee distinction and the specious guidelines it generates obscure rather than illuminate the relevant factors which should govern determination of the question of duty. See *Rowland* v. *Christian*, 69 Cal. 2d 108, 117. The owner's conduct in maintaining his premises does not depend on whether his visitor is a social or business acquaintance. Moreover, the visitor's safety does not become less worthy of protection by the law because he is a social guest and not a business invitee.[5]

It no longer makes any sense to predicate the landowner's duty solely on the status of the injured party as either a licensee or invitee. Perhaps, in a rural society with sparse land settlements and large estates, it would have been unduly burdensome to obligate the owner to inspect and maintain distant holdings for a class of entrants who were using the property "for their own convenience" (the *Sweeny* case, 10 Allen 368, *supra*) but the special immunity which the licensee rule affords landowners cannot be justified in an urban industrial society. See *Smith* v. *Arbaugh's Restaurant, Inc.* 469 F. 2d 97, 101 (D. C. Cir.); Harper and James, Torts, § 27.2, p. 1432, n. 13. We can no longer follow this ancient and largely discredited common law distinction which favors

---

[5] "There has, however, been quite a vigorous undercurrent of dissent, as to whether this [classification of the social guest as a licensee] is really in accord with present social customs under which it is contended that the guest, invited and even urged to come, rightfully expects more than mere inactivity for his safety; and some writers have urged that the social guest be treated as an invitee." Prosser, Torts (4th ed.) § 60. See Harper, *Laube* v. *Stevenson:* A Discussion, 25 Conn. Bar J. 123; McCleary, The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land, 1 Mo. L. Rev. 45, 58; Notes, 12 Rutgers L. Rev. 599; comments, 22 Mo. L. Rev. 186; 7 Wm. & M. L. Rev. 313.

the free use of property without due regard to the personal safety of those individuals who have heretofore been classified as licensees. The problem of allocating the costs and risks of human injury is far too complex to be decided solely by the status of the entrant, especially where the status question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case.[6] See *Mile High Fence Co.* v. *Radovich*, 175 Colo. 537, 541–544.

Therefore, we no longer follow the common law distinction between licensees and invitees and, instead, create a common duty of reasonable care which the occupier owes to all lawful visitors.[7] This decision is in accord with the modern trend [8] in the common law which the Supreme

---

[6] See the *Arbaugh's Restaurant* case, *supra*, 103–104. "Harshness results [when using the visitor's status to determine the duty owed him] because the essential task of judging a landowner's conduct under prevailing community standards is removed from the province of the jury. Through motions for dismissal, for directed verdicts, and for judgment notwithstanding the verdict, courts resolve the issue of liability solely on the facts which establish the status of the person injured. Mechanical legal decisions made by judges eliminate jury scrutiny of the actual conduct of the visitor and the landowner." The case before us presents a clear example of this problem as the plaintiff's right to recover depended on his classification as an invitee.

[7] We feel that there is significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right — such as a licensee or invitee. For this reason, among others, we do not believe they should be placed in the same legal category. For example, one who jumps over a six foot fence to make use of his neighbor's swimming pool in his absence does not logically belong in the same legal classification as a licensee or invitee. Frankly, we are not persuaded as to the logic and reasoning in *Rowland* v. *Christian*, 69 Cal. 2d 108, in placing trespassers in the same legal status as licensees and invitees. The possible difference in classes of trespassers is miniscule compared to the others. These differences can be considered when they arise in future cases.

[8] See *Rowland* v. *Christian*, 69 Cal. 2d 108 (1968), *Pickard* v. *City & County of Honolulu*, 51 Hawaii 134 (1969), *Mile High Fence Co.* v. *Radovich*, 175 Colo. 537 (1971) (the plaintiff was a police officer), and *Smith* v. *Arbaugh's Restaurant, Inc.* 469 F. 2d 97 (D. C. Cir.) (1972) (the plaintiff was a health inspector). In each of these cases, the court held that the landowner owed a duty of reasonable care to all visitors *including* trespassers. In England, the Occupiers' Liability Act, 1957, 5 & 6 Eliz. 2, c. 31, effectuated the recommendations of the Law Reform Committee's Third Report, Cmd. 9305, by abolishing the licensee-invitee distinction at common law. The act declared that the occupier owes the same "common duty of care" to all lawful visitors. See also Harper and James, Torts, §§ 27.1–27.14, pp. 1430–1505; Pros-

Court has characterized as moving toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." *Kermarec* v. *Compagnie Generale Transatlantique,* 358 U. S. 625, *supra,* at p. 631. "A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." The *Arbaugh's Restaurant* case, *supra,* at 100. In the absence of legislative action, we believe that this "reasonable care in all the circumstances" standard will provide the most effective way to achieve an allocation of the costs of human injury which conforms to present community values.[9]

The abolition of the licensee-invitee distinction and the creation of a "reasonable care in all the circumstances" standard will not leave the jury without standards to guide their determination of reasonable conduct. The principles which are now to be applied are those which have always governed personal negligence. See the *Arbaugh's Restaurant* case, *supra,* at 105. Our decision merely prevents the plaintiff's status as a licensee or invitee from being the sole determinative factor in assessing the occupier's liability. However, the foreseeability

---

ser, Torts (4th ed.) § 62; Marsh, The History and Comparative Law of Invitees, Licensees and Trespassers, 69 L. Q. Rev. 182, 359; McDonald & Leigh, The Law of Occupiers' Liability and the need for Reform in Canada, 16 U. of Toronto L. J. 55; Notes, 12 Rutgers L. Rev. 599; 70 L. Q. Rev. 33; 19 Mod. L. Rev. 691; comments, 22 Mo. L. Rev. 186; 44 N. Y. U. L. Rev. 426.

[9] For these reasons, we cannot adopt the simplistic approach suggested by the plaintiff, namely, to permit recovery by placing him in the category of a business invitee. We reject this suggestion because of our conviction that there is no rational or logical basis for doing so even though it may decide the case in favor of the plaintiff. The cases which would permit such a holding are not based on sound reasoning. To follow them would serve only to complicate matters further. The often cited language of Chief Justice Marshall in 1821 in *Cohens* v. *Virginia,* 6 Wheat. 264, has no application to the present situation. We are not here dealing with "general expressions." On the contrary, we are deciding the sole issue raised, namely, the legal status of the plaintiff. We do this by abolishing the distinction between licensees and invitees, a result which clarifies the law in an area that admittedly is in a state of confusion because of the irrationality and inconsistencies in a large number of cases on the subject.

of the visitor's presence and the time, manner, place and surrounding circumstances of his entry remain relevant factors which will determine "in part the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury." The *Arbaugh's Restaurant* case, *supra*, at 106.

Our holding in the instant case does not make landowners and occupiers insurers of their property nor does it impose unreasonable maintenance burdens. The "reasonable care in all the circumstances" standard will allow the jury to determine what burdens of care are unreasonable in light of the relative[10] expense and difficulty they impose on the owner or occupier as weighed against the probability and seriousness of the foreseeable harm to others. Indeed, the particular facts in some cases could require a directed verdict for the defendant on the basis that there was no evidence of negligence for the jury's consideration. See *Vance* v. *Wayside Inn, Inc.* 335 Mass. 617, 619, and cases cited. Thus, in the instant case, if the plaintiff policeman, in the course of chasing a thief, was injured at 2 A.M. when he fell into an unguarded hole in the defendants' private cellar, the defendants might well be entitled to a directed verdict because the time and place of the policeman's entrance was not an event which the defendants should have foreseen in the exercise of reasonable care. On the other hand, if the defendants directed the policeman to search the cellar or knew he was going there, it could be found that the defendants were under an obligation to warn the policeman of the dangers known to the defendants.

We believe that the reasonable care standard will give the jury the flexibility they need to assess the burden of liability on the facts of each case and in accordance with community standards as to what constitutes acceptable behavior on the occupier's part. Cases which adhere to a contrary rule are no longer followed.

---

[10] Thus, what might be a reasonable burden to impose on one owner may require unreasonable sacrifices for another. The *Arbaugh's Restaurant* case, 107.

In the instant case, the plaintiff was injured while acting in accordance with his official duties as a police officer and therefore was lawfully on the defendants' premises. The defendants were liable to him for negligent maintenance of their premises. Moreover, since the injury occurred after the plaintiff had delivered a criminal summons to one of the defendants, a finding may be warranted that the defendants owed a duty to warn the plaintiff of the dangerous ice condition.

The exceptions are sustained as to counts 1 and 4, and are overruled as to counts 2, 3, 5 and 6.

*So ordered.*

QUIRICO, J. (concurring in part and dissenting in part, with whom Reardon, J., joins). The plaintiff seeks recovery from each of two defendants (presumably husband and wife) for personal injuries sustained by him as a result of the defendants' alleged negligence, gross negligence, and wilful, reckless or wanton conduct. The sole question before this court is whether the trial judge properly directed verdicts for the defendants on all counts after counsel for the plaintiff stated the following facts in his opening statement. The defendants owned a two year old house which was equipped with gutters to catch water from the roof. There were leaders to carry water out of the gutters, but there were no drainpipes to carry the water from the leaders down to the ground for underground disposal. The gutters were broken in some places. The water from the roof fell from those breaks and from the leaders to the ground where it froze. The plaintiff, a police officer acting in his official capacity, went to the house and there served a summons for a motor vehicle parking violation on one of the defendants. On his way from the house to the street the officer was caused to fall and sustain injuries by reason of ice thus accumulated on the defendants' property.

I concur with that part of the opinion of the court holding that the opening statement "was devoid of any facts

which would have warranted a jury finding of gross negligence or wilful, wanton and reckless conduct," and that the judge properly directed verdicts for the defendants on the counts making those allegations.

In directing verdicts for the defendants on the two counts alleging ordinary negligence the judge acted on the basis of the law as heretofore stated and applied by this court in *Creeden* v. *Boston & Maine R.R.* 193 Mass. 280, 283, *Brennan* v. *Keene*, 237 Mass. 556, 561, *Brosnan* v. *Koufman*, 294 Mass. 495, 501, *Wynn* v. *Sullivan*, 294 Mass. 562, 564–565, *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344, 347–349, and *Carroll* v. *Hemenway*, 315 Mass. 45, 46. All of these cases state or apply the rule that the status of a police officer or fireman who goes upon the property of another in the performance of his official duties is that of a licensee and that, therefore, he is not entitled to recover for injuries caused to him by the negligence of the owner or occupant of that property. Compare *Parker* v. *Barnard*, 135 Mass. 116.

The plaintiff asks in his brief that this court (a) change the rule described above and now "define the status of the plaintiff in his cause to be that of a business invitee," and (b) hold "that the allowance of the defendants' motion [for directed verdicts] was error and the case should be remanded for trial."

The court grants the plaintiff's ultimate request for a new trial. In reaching that conclusion the court discusses at some length the opinions in *Learoyd* v. *Godfrey*, 138 Mass. 315, *Toomey* v. *Sanborn*, 146 Mass. 28, and *Gordon* v. *Cummings*, 152 Mass. 513. It then states that these three cases "provide ample authority for holding in the instant case that the plaintiff was an implied invitee to whom the defendants owed a duty of reasonable care to keep the route of access to their premises in reasonably safe condition. . . . At the very least, these three cases have established the occupier's and landowner's obligation to keep the access routes to his house in reasonably safe condition for those who are required to use them in the performance of their official duties. . . . Thus, we

*could* rest our decision in the instant case on the narrow ground that the plaintiff was an implied invitee to whom the defendants owed a duty to keep the route of access to their premises in reasonably safe condition" (emphasis supplied).

I would (a) eliminate the word "could" from the last sentence quoted above from the court's opinion, (b) expressly overrule the *Creeden, Brennan, Brosnan, Wynn, Aldworth* and *Carroll* cases, all *supra,* in their holdings that a police officer or fireman is a licensee when on private property in the performance of his official duties, and (c) treat that as the end of the holding in this case. On this basis I would concur with the court's order sustaining the plaintiff's exceptions to the direction of verdicts for the defendants on counts 1 and 4 based on negligence, and overruling his exceptions as to all other counts.

My concurrence is limited to the part of the opinion and to its conclusions described above. However, the opinion does not stop there. It continues with a lengthy discussion of difficulties which have resulted from rules described as having been developed "in a rural society with sparse land settlements and large estates," but which "cannot be justified in an urban industrial society," and which allegedly make the right of a person injured on the land of another dependent on an "archaic and rigid classification system" which attempts to label all such persons by "arbitrary categories" of either invitees, licensees or trespassers. The opinion refers to the judicial distinction between invitees and licensees as an "ancient and largely discredited common law distinction which favors the free use of property without due regard to the personal safety of those individuals who have heretofore been classified as licensees."

After completing its discussion of the present rule and of difficulties involved in its application, the court declares a broad rule, new to the jurisprudence of this Commonwealth, in the following language: "Therefore, we no longer follow the common law distinction between licensees and invitees and, instead, create a common

duty of reasonable care which the occupier owes to all lawful visitors. . . . Cases which adhere to a contrary rule are no longer followed."

I am unable to agree with the use of the present case as the vehicle for the promulgation of such a broad new rule of law which purports to have application beyond what I believe to be the scope and necessities of the present case. In this respect my position is similar to that which I expressed in my separate concurring and dissenting opinion in *Boston Housing Authy.* v. *Hemingway, ante,* 184, at 206 and 219–220. In this connection it may be appropriate to call to mind the following frequently repeated statement made by Chief Justice Marshall in 1821 in *Cohens* v. *Virginia,* 6 Wheat. 264, 399–400, with reference to his own earlier opinion in *Marbury* v. *Madison,* 1 Cranch 137: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *O'Donoghue* v. *United States,* 289 U. S. 516, 550. *Humphrey's Exr.* v. *United States,* 295 U. S. 602, 627. *Swan* v. *Superior Court,* 222 Mass. 542, 545.

Consistent with what I have said above to be my view of the limitation of the decision of this case, I continue, under the clear label of dictum, with a discussion of the rules of law under consideration.

1. Without subscribing to the court's characterizations of the present system of classifying all persons who enter the property of others as either invitees, licensees or trespassers, I agree that some phases of the present law on this subject deserve the court's attention and reconsidera-

tion.  This is particularly true with respect to some of our decisions which have made further distinctions between various "invitees" with a resulting proliferation of subclassifications such as the following: "business invitees," "business visitors," "invitees conferring a benefit on invitors," "social invitees," "social guests," "social visitors," "gratuitous invitees," "gratuitous social guests," and perhaps other even more subtle distinctions. See *Massaletti* v. *Fitzroy*, 228 Mass. 487, *Comeau* v. *Comeau*, 285 Mass. 578, *Zaia* v. *"Italia" Societa Anonyma di Navigazione*, 324 Mass. 547, *Taylor* v. *Goldstein*, 329 Mass. 161, and *Tomaino* v. *Newman*, 348 Mass. 433.

In decisions too numerous to cite, this court has held consistently that an invitor is not liable for negligence causing injuries to his "social invitee," "social guest," "social visitor," "gratuitous invitee," "gratuitous social guest," or his 'invitee" who did not confer a benefit on him.  The result in those cases was the same as that reached in cases involving licensees as distinguished from invitees.  It was unfortunate, but perhaps inevitable, that this court would at some point appear to equate these types of nonbusiness invitees with licensees.  This appears to have happened in *Pandiscio* v. *Bowen*, 342 Mass. 435, 438, which held that, where a daughter was injured while helping her mother put up some curtains at the mother's home and at the mother's invitation, "the daughter's position, in respect of her mother, was that of a licensee or social guest."  That was probably not intended to be a holding that the daughter was not an "invitee" but rather that as a "social guest" the daughter could no more recover from her mother than could a "licensee."

The *Pandiscio* decision is not the first in which a court has appeared to treat a social guest as a licensee.  The problem existed at least as early as 1892, as indicated by the following language in our decision in *Hart* v. *Cole*, 156 Mass. 475, 477–478: "[W]hether an implied invitation to come as a guest for friendly intercourse can create a liability greater than that to an ordinary licensee, it is

not easy to decide. No case in this country involving these questions has been brought to our attention. In *Southcote* v. *Stanley*, 1 H.&N. 247, it is said, in substance, that the liability of an owner of a dwelling-house to a visitor who is there on his express invitation is no greater than that to a licensee. . . . In the late case of *Indermaur* v. *Dames*, L. R. 1 C. P. 274, . . . [the court] treats a guest as a mere licensee. . . . It seems to be the rule in England, that an ordinary guest in a dwelling-house, although expressly invited, has no greater rights than a licensee."

The time may well be at hand when, in a case raising the issue, we should discard many, if not all, of the distinctions which our decisions have made between business invitees and other invitees and hold that an invitor owes to his invitee, whether business or social and whether invited expressly or impliedly, the duty to exercise reasonable care to maintain the premises covered by the invitation in a reasonably safe condition in all the circumstances.

2. The next question is whether the time is at hand to go further and declare, as the court purports to declare today, that under the law of this Commonwealth the rule governing the liability of owners or occupiers of real estate to their invitees who are injured thereon shall also apply to licensees who are injured thereon. I do not believe that it is.

In thus enlarging the liability to licensees, this court appears to have adopted and subscribed to much of the language contained in the opinion in *Smith* v. *Arbaugh's Restaurant, Inc.* 469 F. 2d 97 (D. C. Cir.), where the facts were very much like those of the present case, and to have assumed that case to be a precedent for such an enlargement of liability. There the plaintiff was a health inspector. He was injured in a fall on stairs on the defendant's premises which he was then inspecting in his official capacity. There the court reviewed the common law rule on the liability of the owner or occupant of land toward invitees, licensees and trespassers injured

thereon, criticised the rule, concluded, at p. 101, that these classifications are "alien to modern tort law, primarily because they establish immunities from liability which no longer comport with accepted values and common experience," and then purported, at p. 102, to declare a new rule requiring "reasonable care under all the circumstances," apparently applicable to all three categories of injured persons. That is the same rule which this court in the present case is apparently declaring applicable to all invitees and licensees, reserving for future consideration its applicability to trespassers.

In deciding *Smith* v. *Arbaugh's Restaurant, Inc.*, *supra*, the court assumed that the plaintiff was an invitee at the time and place of his injury. It said, at p. 99, fn. 3, that "[i]n Smith's case, although the precise question does not seem to have been decided in the District of Columbia, . . . it is generally the rule that health inspectors are business invitees. *See* 2 F. Harper and F. James, The Law of Torts, § 27.12 at 1482 (1956)." It said further, at p. 100, that "[o]nly for the invitee must the landowner exercise ordinary care and prudence to render his premises reasonably safe for the visit," citing in support thereof the cases of *Arthur* v. *Standard Engr. Co.* 193 F. 2d 903, 905 (D. C. Cir.), cert. den. 343 U. S. 964, and *Schwartzman* v. *Lloyd*, 82 F. 2d 822 (D. C. Cir.). Since the court assumed that Smith was a business invitee, and the law of the District of Columbia already permitted a business invitee to recover for injuries caused by the negligence of the owners or occupants of premises, it is difficult to understand how anything which the court said about changing the law on the rights of licensees was either necessary to the decision or a part of its holding.

After stripping the opinion in *Smith* v. *Arbaugh's Restaurant, Inc.*, *supra*, of its dictum, some of which is reminiscent of language in *Javins* v. *First Natl. Realty Corp.* 428 F. 2d 1071 (D. C. Cir.), and exposing the limited holding in the case, the opinion is of questionable value as a claimed precedent to support the broad exten-

sion of the rule of liability to invitees to cover licensees. Such a fundamental change in our law should rest on a stronger foundation than the dictum of the *Smith* case.

3. The present case was argued by both sides before this court on the assumption that our law was as stated most recently on April 3, 1972, in *Huska* v. *Clement*, 361 Mass. 522, 523, that "[t]he plaintiff's right to recover for ordinary negligence is dependent upon his status as an invitee," and that if he was a licensee he could not recover. They did not ask us to change that rule. The plaintiff asked only that his client be held to be an invitee and not a licensee when he was injured. The court acknowledges that this case could be decided in favor of the plaintiff on that basis, but instead it establishes a new rule of liability to licensees. The briefs and oral arguments before this court did not concern themselves with such a rule. From that I think we may assume that the parties did not consider the case as involving the issue of extension of liability to licensees. If such a fundamental change in our law is otherwise desirable, it should more appropriately be accomplished in a case in which the issue is raised, in which the court has the benefit of briefs and arguments directed specifically thereto, and in which the court can better weigh and consider the far reaching implications and consequences of such a change.

KAPLAN, J. (concurring). I go along with the court but I am taken somewhat aback by footnote 7 which seems unfaithful to the rest of the opinion. The court holds that the measure of responsibility of an occupier should no longer depend on whether the injured person is characterized as a "licensee' rather than an "invitee," or vice versa; the question is to turn on other, more vital factors. But footnote 7 seems to say that "trespassers" stand apart, that that characterization is to remain decisive or highly influential. This tends to perpetuate, although on a smaller scale, the kind of tradition-bound and mistaken analysis that I had supposed the court was aiming to correct. For it is sometimes just as hard to

distinguish trespassers from licensees or invitees, as to distinguish licensees from invitees; and the class of trespassers is probably just as various as either of the other classes. The very effort at dry classification and differentation puts the emphasis at the wrong places. Thus it is awkward to leave the suggestion that the basic reasoning of the court's opinion may stop short of so called trespassers. See *Rowland* v. *Christian,* 69 Cal. 2d 108, and note the unsatisfactory condition of English law as to trespassers after they were excluded from the Occupiers' Liability Act, 1957 (mentioned in footnote 8). Millner, Negligence in Modern Law, c. 1, p. 11, c. 2, pp. 47–54 (1967). North, Occupiers' Liability, c. 11 (1971). *Herrington* v. *British Rys. Bd.* [1971] 2 Q. B. 107, affd. sub nom. *British Rys. Bd.* v. *Herrington,* [1972] A. C. 877.