CurraN, Dennis J., J.
All three defendants have moved for summary judgment, alleging that there are no genuine issues of material fact. For the following reasons, their motions must be DENIED.
THE ALLEGED FACTS
Taking, as we must, in the light most favorable to the non-moving party, Mr. Mark Banks, we discern the following facts.
Mark Banks was a member of local 22, Laborer’s union, which was contracted to demolish the ceilings, walls and ten floors to the Prudential Center tower to make way for a new tenant. The defendant Boston Properties, LLC owned the building; the defendant Crown Building Maintenance Co. was its maintenance contractor whose duties included repairing the automatic doors to the building; and the defendant Dynamic Dock & Door, Inc. contracted with Boston Properties to repair and maintain the loading dock area at the building.
The laborers were permitted to use one freight elevator to move significant quantities of debris from the interior of the building out to the dumpsters in the loading dock. In moving that debris, the workers had to proceed through the doorway of an automatic, high-speed door that only operated vertically.
On February 17, 2010, Mr. Banks, while working at this job site, was bringing detritus down from the demolition site to the loading door. As he was walking through the passageway, the 30-40 lb. door suddenly and without warning smashed down upon him, striking his construction helmet and head, and causing him to suffer post-concussion syndrome and memory loss. He also heard something unusual in his neck, which turned out to be a cervical disc herniation.
DISCUSSION
Standard of Liability
As the property owner, Boston Properties owed a common-law duty of reasonable care to all persons lawfully on its premises and maintain the property in a safe condition. Mounsey v. Ellard, 363 Mass. 693, 707 (1973). The defendants, all, may be held liable if they knew of a dangerous condition or should have become aware of such condition and failed to remedy it in the exercise of reasonable care. Deagle v. The Great Atlantic & Pacific Tea Co., 343 Mass. 263, 265 (1961).
The Defendants’ Arguments
All three defendants have offered a “know nothing” defense, in that they claim they knew nothing about this defective door before it crashed down upon Mr. Banks’s skull. (See Memorandum of Boston Properties and Crown Building at page 3: “. . . neither Boston properties nor Crown had any prior knowledge of any [ ] malfunction with the door, nor did it (sic) receive prior notice by any other part of its malfunction.”) Dynamic Dock echoes this strain. (See Memorandum at pages 3 and 4; “No evidence has been put forward to show that Dynamic [ ] knew of a defect, was asked to address a defect, or otherwise failed in any respect to performance whatever they were hired to do.”)
Mr. Banks counters by offering the testimony of Messrs. Lawrence Saunders, James Aresco, and Ambroigio Pascucci, all of whom witnessed the high-speed door acting erratically well before Mr. Banks was struck.
Mr. Saunders has testified that “everybody” had issues with the door and knew the door would get stuck in either the upright or halfway down position; sometimes, the door would go up on its own. He witnessed maintenance workers responding to the scene trying to repair the door, to no avail; the door would continue to malfunction after each repair visit. Mr. Aresco saw the door “acting funny, ” and that it was “pretty obvious.” He saw carts get stuck under the door, and the door going up and down by itself on many occasions, with no prompting whatsoever. Finally, Mr. Pascucci averred that reports were made concerning the door “numerous times,” and also saw repairmen work on the door. Indeed, the door once fell down upon Mr. Pascucci’s shoulder as well as on his debris cart “a bunch of times.”
As to the issue of maintenance, Crown employees routinely inspected and repaired the high speed door. Crown’s lead carpenter was instructed in how to do so by Dynamic employees. He passed his knowledge on to other Crown employees. If a problem arose that *30 Crown could not solve, it would call in Dynamic. Indeed, Boston Properties could also call Dynamic.
Crown’s employee knew that the loading dock was dusty because of all the debris and that such conditions would affect the sensors on the automatic door. Crown routinely tried to clean those sensors.
The maintenance records relating to this door are devastating. In the two years before these injuries felled Mr. Banks, security personnel called Dynamic or the maintenance department at least 17 times to complain about the door. Indeed, in the months before the incident, Boston Properties’ security agents called Crown on September 16, 2009, December 23, 2009, January 6, 2010, January 13,2010, January 20,2010, January 22, 2010 January 29, 2010, February 4, 2010, February 15, 2010 and, finally, February 16, 2010.
Dynamic was notified of problems with the door as early as 2008, and performed repairs at least 16 times between July 28, 2008 and May 19, 2010—and most importantly—in the immediate period before the incident, on December 20, 2010, January 9, 2010, January 20, 2010 and February 1, 2010. Just eleven days before Mr. Banks suffered his injury, Dynamic received an “emergency service call,” and just two days before the incident, Crown received a complaint about the door that the door was off its track and not closing properly.
The defendants’ second defense is that a 30-40 lb. automatic door that fell from its mooring and smashed into a passerby’s head requires ." . . essential expect guidance" as to how it did so, and that no jury could plausibly find for the plaintiff under such facts without such expertise. (See Boston Properties and Crown’s Memorandum at page 5.) By this argument, the defendants believe that a jury cannot use its own common knowledge and wisdom to find, based on the proffered evidence detailed above, that an automatic door cannot operate erratically and cause sudden injury to a passerby. But automatic doors should not fall precipitously and erratically on their own onto a person’s skull. In this modem age, with well-educated and sophisticated jurors, we underestimate the intelligence of jurors. We place far too much reliance on so-called “experts,” such that some persist in the somewhat archaic view that all cases involving a machine require that jurors must be led by the hand—as if they were children—to perform their duties under the laws as instructed and render justice.
A more modern interpretation finds support in the implicit theme of Commonwealth v. Hinds, 450 Mass. 1, 12, n.7, in which the Supreme Judicial Court seemed to level the playing field and emphasized that jurors, although guided by expert witnesses in some instances, are repeatedly told that:

“[Y]ou [as the jury] alone decide what the facts are. ”

“Remember that expert witnesses do not decide cases;juries do.”

It does not require an expert witness to help a jury decide whether an automatic door should operate so erratically, as alleged. Common sense and life experience will do just fine.
ORDER
For these reasons, the defendants’ motions for summary judgment must be DENIED.