JAMES H. PHIPPS *vs.* APTUCXET POST #5988 V.F.W. BUILDING ASSOCIATION, INC. June 6, 1979. A jury awarded damages to the plaintiff for injuries received in a fall on ice in a parking lot controlled by the defendant. While attending a Saturday night dance sponsored by the defendant on January 16, 1971, the plaintiff walked from his car parked in the defendant's lot to the rear door of the dance hall at about 10:00 P.M., his feet doing a "fast shuffle on the ice." The plaintiff fell when his left foot slipped into an "indenture" in the ice, a groove three inches deep and from six to eight inches wide edged with icy "crustations," and his ankle snapped. There was no error in denying the defendant's motions for a directed verdict and for judgment notwith-

standing the verdict. The evidence showed that snow had fallen on January 14, and that icy conditions prevailed until January 16, with intermittent periods of thawing and freezing. A member of the defendant's board of directors testified that at 1:00 or 2:00 P.M. on January 16 he had observed the parking lot, at which time weather conditions were bad and the parking lot "was like a sheet of ice." Several witnesses testified that on the evening in question the parking lot was very slippery, and imprints in the surface could be observed. "There [were] footprints . . . and ruts like automobile tire tracks that had been frozen, and after they had been stepped into [made] it very difficult to walk." There was no evidence of sand or other material on the surface of the ice. The plaintiff estimated that at the time of the accident there were thirty or forty cars parked in the defendant's lot.

1. Taking all circumstances into account, including the fact in evidence that routine attendance at the defendant's Saturday night dances averaged 140 people, as well as an inference that the parking lot would necessarily be traversed by pedestrians walking to and from their cars, the jury could conclude that the defendant had breached its duty to the plaintiff to use reasonable care in the circumstances. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707-709 (1973). The jury could infer that the icy condition of the parking lot observed by the defendant's director eight or nine hours before the plaintiff's accident persisted until 10:00 P.M., based on the fact in evidence that the temperature on January 16 never exceeded sixteen degrees Fahrenheit. The jury could also infer that the rutted condition of the parking lot at the time of the accident may have been caused by the ingress and egress of cars of visitors and could conclude that the defendant, in the exercise of reasonable care, knew or should have known of the hazardous condition of its parking lot and should have taken reasonable precautions for the safety of its visitors. This case is similar to those cases allowing recovery to business visitors who slipped on ice, in which circumstantial evidence and descriptions of the condition of the ice at the time of injury were sufficient to support findings of a breach of duty of care by the defendants. *Jakobsen* v. *Massachusetts Port Authy.*, 520 F.2d 810, 812, 817 (1st Cir. 1975) (a half-inch of glazed ice on well travelled airport terminal sidewalk; evidence was sufficient for jury to conclude that the defendant had notice of the hazardous condition and had a reasonable opportunity to correct it). *Willett* v. *Pilotte*, 329 Mass. 610, 613 (1953) (hard packed ice with two to three inch ruts). *Thornton* v. *First Natl. Stores, Inc.*, 340 Mass. 222, 223-224 (1960) (ice frozen solid). *Delano* v. *Garrettson-Ellis Lumber Co.*, 361 Mass. 500, 501-503 (1972) (muddy ice with three to four inch ruts). *Baldassari* v. *Produce Terminal Realty Corp.*, 361 Mass. 738, 741-742, 744 (1972) (accumulation of thick wavy ice on platform). Contrast *Oliveri* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 165, 170 & n.1 (1973) (hard, dirty substance on subway stairs); *Ventor* v. *Marianne, Inc.*, 1 Mass. App. Ct. 224 (1973) (dirty, soapy water on laundromat floor).

2. The defendant raised the doctrine of charitable immunity as a defense in this action, the plaintiff's fall having occurred prior to the

Rescript Opinions.

enactment of G. L. c. 231, § 85K, imposing tort liability upon charitable organizations with prescribed limitations. See *Higgins* v. *Emerson Hosp.*, 367 Mass. 714, 715-716 (1975). Even if we assume, without deciding, that the purposes delineated in the defendant corporation's articles of organization under G. L. c. 180 could be considered charitable and that there was evidence that these purposes were carried out for the benefit of the public at large or for some indefinite class of persons (see *Matter of Troy*, 364 Mass. 15, 58 [1973]), the judge did not err in denying the defendant's motion for a directed verdict. The evidence showed that funds derived from the regular Saturday night dances constituted eighty-five to ninety percent of the defendant's income and were used primarily to pay mortgage and overhead expenses on the defendant's building. On this evidence, the jury could have found that the defendant was not engaged in an activity directly within any alleged public charitable purpose at the time the accident occurred, but was engaged in a primarily commercial activity, and thus was not entitled to the defense of charitable immunity. See *McKay* v. *Morgan Memorial Coop. Indus. & Stores, Inc.*, 272 Mass. 121, 124 (1930). Contrast *Boxer* v. *Boston Symphony Orchestra, Inc.*, 342 Mass. 537, 540-541 (1961).

*Judgment affirmed.*

*Charles R. Desmarais* for the defendant.
*James R. McMahon, Jr.*, for the plaintiff, submitted a brief.