McCann, J.
The plaintiffs brought this action to recover for personal injuries Linda Mankiewicz suffered as a result of slipping and falling on a patch of ice located just outside the entranceway to her apartment building. In Count I of the Complaint, the plaintiffs assert a claim of negligence for failure to remedy a potentially hazardous condition and, in Count II, Linda’s husband, Jeffrey Mankiewicz, seeks damages for loss of consortium. Leominster Regency Associates, LP (“Regency”) has moved for summary judgment on grounds that Mankiewicz’s fall was caused, in part, by a natural accumulation of snow and, as such, her injuries were not the result of any negligent conduct on its part. For the reasons set forth below, the defendant’s motion is ALLOWED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the plaintiff, as revealed by the summary judgment record are as follows. The plaintiffs were long-time residents of an apartment complex located *246 on 89 Mooreland Avenue, Leominster, Massachusetts. At all times relevant to this proceeding, the complex was owned and operated by the defendant Regency. As part of its year-round maintenance of the apartment complex, Regency contracted with a landscaping company to remove snow and ice from the surrounding parking lots and walkways. To ensure that this process was executed efficiently, Regency instituted a written policy mandating that all tenants move their vehicles from the parking lot to the street before 10:30 a.m. following a winter storm. The notice, which was posted in various locations throughout the apartment complex, also provided that the steps and walkways leading to the parking lots would be kept as clean as possible during the plowing process. This assurance was also reinforced by a clause in the plaintiffs’ lease, which provided that Regency would comply with all provisions of the State Sanitary Code.
On January 14, 1999, a winter storm rolled into Leominster, Massachusetts leaving upwards of three inches of snow. As the storm continued into the early morning hours of Januaiy 15, the temperatures began to rise and the precipitation turned from snow into sleet and freezing rain. As a result of the high winds that accompanied the storm, nearly all exterior surfaces were coated by snow with a layer of ice on top. Following the snow removal procedures notification, Mrs. Mankiewicz proceeded from her apartment out towards her parking lot. As she exited the physical confines of her building, Mrs. Mankiewicz stepped onto a covered platform which abutted a series of stairs leading down to the parking lot. After taking an initial step onto the platform, Mrs. Mankiewicz slipped and fell forward down the connecting stairs. A subsequent inspection by Mr. Mankiewicz revealed a large, smooth and wet slab of ice in the area where his wife slipped and fell.
Mrs. Mankiewicz has since deceased from unrelated complications, but her estate and husband, Jeffrey Mankiewicz, brought this action in negligence, on her behalf, to recover damages for personal injuries she sustained, the corresponding medical expenses, and for pain and suffering. Mr. Mankiewicz also brought a second claim for loss of consortium. Regency now moves for summary judgment on both counts, claiming that it did not have a duty to remove the natural accumulation of snow and ice upon which Mrs. Mankiewicz slipped and fell.
DISCUSSION
I. Standard of Review
Summary Judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass, at 17.
II. Natural Accumulation of Snow and Ice
The duty owed by a property owner to someone lawfully on his premises is one of reasonable care. Mounsey v. Ellard, 363 Mass. 693, 707-08 (1973). It is well settled in the Commonwealth that a property owner’s duty is not violated by the owner’s failure to remove a natural accumulation of snow or ice. Sullivan v. Brookline, 416 Mass. 825, 827 (1994), citing Aylward v. McCloskey, 412 Mass. 77, 80 (1992). Liability attaches only for “injuries caused by defects existing on their property and . . . the law does not regard natural accumulation of snow and ice as an actionable property defect.” Id. at 79.
Liability may attach, however, “where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard.” Sullivan, 416 Mass, at 827, citing Aylward, 412 Mass, at 80, n.3. In this regard, courts in the Commonwealth have typically assessed liability to defendants in three distinct areas: (1) where the plaintiff sustained injuries from a fall on an unnatural accumulation of ice or snow that formed as a result of water flowing from a defective roof, see Baldassari v. Produce Terminal Realty Corp., 361 Mass. 738, 744 (1972) (holding that “[t]he juiy would have been warranted in finding that snow melted and flowed through holes in the roof. . . which [the defendant] negligently had failed to repair and thus created an unnatural accumulation of ice resulting in the plaintiffs fall”); (2) where the plaintiff sustained injuries from a fall on an unnatural accumulation of ice or snow that formed from an artificially created condition that confined melt water into a definite channel or accelerated its flow to a certain locale, see Cooper v. Braver, Healey & Co., 320 Mass. 138 (1946) (denying liability because plaintiff was unable to produce evidence showing that there was any artificial condition “to confine the water into a definite channel or to accelerate its flow”);[3] and (3) where the plaintiff sustained injuries from a fall on ice or snow that accumulated in a natural state and was then physically transformed into an unnatural and subsequently hazardous state, see Delano v. Garrett- *247 son-Ellis Lumber Co., 361 Mass. 500, 501 (1972) (noting that there was “muddy ice, with tire marks and ruts three and four inches deep, covered and obscured by about half an inch of powdery snow”); Phipps v. Aptucxet Post #5988 V.F.W. Bldg. Assoc., Inc., 7 Mass.App.Ct. 928, 929 (1979) (noting that there were footprints and frozen ruts from automobile tires in the ice).[4]
In the case at bar, the plaintiffs have failed to come forth with evidence sufficient to sustain any of the aforementioned theories. First, the plaintiffs do not assert, nor was any evidence presented to establish that the ice upon which Mrs. Mankiewicz slipped resulted from a defect or leak in the roof covering the exterior platform. Indeed, Mr. Mankiewicz noted that the only possible defect he observed was the slant of the roof covering the platform.
Second, the plaintiffs have not produced any evidence that the ice on the platform landing formed as a result of an accelerating or channeling effect from the roof covering the platform Although Mr. Mankiewicz had, in the past, witnessed precipitation flow off the roof of the back entrance, he did not on the day in question, or at any time prior to the accident, actually witness any precipitation fall from the slanted roof onto the platform where his wife slipped and fell. In fact, Mr. Mankiewicz could only speculate that it was possible that precipitation could flow from the slanted roof onto the platform and subsequently freeze. A plaintiff, however, may not rely on speculative or conjectural statements in an attempt to defeat a defendant’s motion for summary judgment. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Moreover, any inference possibly drawn from Mr. Mankiewicz’s observation of the back entrance is dramatically curtailed by his own admission that the precipitation on the day in question was falling at an angle into the covered portion of the building and onto the platform by the door.[5] Indeed, Mr. Mankiewicz noted that the precipitation was blowing onto the platform and that it was the type of storm that covers everything with ice.
Third, the plaintiffs also failed to produce any evidence showing that the ice was transformed from a natural state into an unnatural and subsequently hazardous state. In fact, Mr. Mankiewicz noted that the ice upon which his wife slipped and fell was just a slab of glare ice. He also stated that there were not any footprints in the ice, other than those formed by his son after the accident, and that there were not really any bumps on the slab. Although the slab itself was uneven, Mr. Mankiewicz himself attributed the inconsistency to the precipitation blowing onto the platform at an angle. Furthermore, Mr. Mankiewicz’s testimony as the presence or effect of rock salt was also inconclusive. Indeed, Mr. Mankiewicz could not conclusively state whether the slab was melting as a result of chunks of rock salt on the platform or from the warming temperatures. However, even if this fact could be reasonably established at trial, it would still be unavailing to the plaintiffs. The application of rock salt to an ice-covered surface, causing it to partially melt and become slick does not, as a matter of law, subject a land owner to liability in the Commonwealth. Goulart v. Canton Hous. Auth., 57 Mass.App.Ct. 440, 443 (2003). Thus, absent sufficient proof on any of the aforementioned theories, this Court finds that Regency did not breach its duty of reasonable care.
III. Contractual, Statutory and Regulatory Duty to Remove Snow and Ice
The plaintiffs next assert that even if liability does not attach under the common law, the defendant assumed a duty to remove the snow and ice through its snow removal procedures directive, its lease with the plaintiff, and under 105 CMR410.452 of the Sanitary Code. With regard to the first two potential sources of liability, it is well settled in the Commonwealth that a landlord who agrees in a lease or contract to remove snow and ice, and negligently performs that duty, may be liable to his tenant. Carey v. Medley, 327 Mass. 189, 193 (1951). “However, failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made.” Anderson v. Fox Hill Vill Homeowners Corp., 424 Mass. 365, 368 (1997). Therefore, standing alone, a breach of contract is not a tort as well. Id, quoting Redgrave v. Boston Symphony Orchestra, Inc., 557 F.Sup. 230, 238 (D.Mass. 1983). ‘To conclude that tort liability exists solely because the defendant did not perform a contractual duty to remove snow and ice would give rise to a common law duty which [the Supreme Judicial Court] repeatedly ha[s] declined to impose on landowners.” Id at 368-69.
In the instant case, there is no evidence that the defendant negligently maintained either the platform or the abutting steps of the Mankiewicz’s apartment building. As previously discussed, the application of rock salt, as a matter of law, does not rise to an actionable level of negligent conduct. Furthermore, the plaintiffs themselves dispute the fact that third-party defendant Ferguson even cleared and serviced the stairs of the complex on the day in question. Indeed, as the plaintiffs admit in their brief, their claim arises out of the defendant’s alleged “faiflure] to take action to make the steps reasonably safe.” Pis.’ Br. at 3. Framed as such, the plaintiffs’ action lies in breach of contract, and not under negligence law as it asserts.
With regard to 105 CMR 410.452, that section of the Sanitary Code provides that an “owner shall . . . keep all exterior stairways, fire escapes, [and] egress balconies . . . free of snow and ice . . .” In the instant case, it is undisputed that the defendants failed to remove the slab of ice from the platform of their building prior to Mrs. Mankiewicz’s fall. The plaintiffs, relying on McAllister v. Boston Hous. Auth., 429 Mass. 300 (1999), argue that this violation of the Sanitary Code is evidence of negligence, and as such, Regency’s motion for summary judgment should be denied. This argument must fail for two reasons. First, as a general rule, a “[violation of an ordinance requiring that walks *248 be cleared of snow and ice does not create a duty in a plaintiff where one does not exist independently.” Goulart, 57 Mass.App.Ct. at 444. As noted above, a duty to remove the ice did not exist independently by contract or under the common law. Second, courts of this Commonwealth “do not construe a safety statute to establish a new civil cause of action without express terms or clear legislative intent to that effect.” Lindsey v. Massios, 372 Mass. 79,84 (1977); see also St Germaine v. Pendergast, 411 Mass. 615, 620 (1992). This Courtis not convinced that the requisite legislative intent exists to sustain a negligence action under 105 CMR 410.452.
Section 410.452 is a part of Article II of the State Sanitaiy Code, which was promulgated under authority granted by G.L.c. Ill, §127A. Sections 127C-F and 1271 of G.L.c. Ill, in turn, create a civil cause of action for violation of the Sanitaiy Code as promulgated under Section 127A. The cause of action afforded by these statutes, however, is essentially one of tenant enforcement. Indeed, as the Supreme Judicial Court noted in Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 193 (1973), “(t]he purpose of these statutes was to allow tenants to initiate the Code enforcement process by bringing before the courts recalcitrant landlords who refused to remedy conditions in the tenants’ dwelling units which violate the State Sanitary Code.”
In the case at hand, the plaintiffs are not seeking to enforce the Sanitaiy Code or remedy an existing defect. Rather, they are seeking to use a provision of the Sanitaiy Code to create a new cause of action in negligence, contrary to that of the common law. Based on the relevant authority, this Court does not believe that it was the Legislature’s intention, when it drafted G.L.c. Ill, §§127A-H, to alter the common-law principle that liability does not extend to landowners for the failure to remove a natural accumulation of snow and ice. Id.; see also Young v. Ganuacki, 380 Mass. 162, 170-71 (1980) (noting that the Sanitaiy Code imposes on the landlord no greater duty than that prescribed by the common law). Moreover, in the absence of such authority under G.L.c. Ill, §§127A-H, there is no basis for the promulgation of a contradicting regulatoiy provision under 105 CMR 410.452. Accordingly, the plaintiffs’ claim must fail on these grounds as well.
Absent a finding, on any of the aforementioned theories, that Regency owed the Mankiewiczs a duty to remove the natural accumulation of ice from the building platform, the plaintiffs cannot sustain their burden on either Count of its Complaint. As such, Regency’s Motion for Summary Judgment on both Counts of the plaintiffs’ Complaint is allowed.
ORDER
For the reasons stated herein, it is hereby ORDERED that Regency’s Motion for Summary Judgment on Count I and II of the plaintiffs’ complaint is ALLOWED.

Notably, this line of cases has generally addressed property defects on private land that result in the channeling of water onto a public way.

Although each of the aforementioned scenarios varies in some degree from the other, this Court notes that a determinative element in finding liability in each circumstance was the defendant’s generation of the hazard.

The plaintiffs’ theory that the ice resulted from a channeling effect caused by the slanted roof is also weakened by the fact that Mankiewicz slipped upon taking her first step, directly underneath the covering off the platform.