MacLeod-Mancuso, Bonnie H., J.
The plaintiff, Thelma Applestein (“Applestein”), brought this claim against defendants Boston Marriott-Newton (“Marriott”), Anthony Vanaría & Sons, Inc. (“Vanaría”), and James DeVincent Landscape Co. (“DeVincent”) for injuries she sustained while on Marriott’s property.
Applestein alleges that the defendants negligently maintained and sanded the Marriott parking lot, causing her to fall on an unnatural accumulation of ice.
Before the court are defendants’ Marriott’s, DeVincent’s, and Vanaria’s Motions for Summary Judgment. For the reasons stated below, summary judgment is ALLOWED.

BACKGROUND

The facts, taken in the light most favorable to the non-moving party, are as follows. The plaintiff, Applestein, had been a member of the Marriott for thirty-five years and often swam in the hotel pool in the mornings. On March 10, 2005, Applestein arrived at the Boston Marriott-Newton at approximately 7:30 a.m. and parked her car to the right of the front entrance. As she exited her vehicle, she noticed two men sanding the parking lot. Weather records indicate that it had last snowed on March 8, and temperatures for the prior two days had *665 ranged from 45 to 24 degrees Fahrenheit. On the morning of March 10, the temperature was approximately 20 degrees.
As Applestein proceeded to the hotel’s entrance, she slipped on what she believed to be sanded ice. No one at the scene, however, made observations of the ground on which Applestein fell. Applestein landed on her left side and was unable to move. Marriott employees immediately called emergency personnel who transported Applestein to Newton Wellesley Hospital. Physicians at the hospital treated Applestein for a left humeral fracture. Following the accident, Applestein’s mobility was limited. She could not drive or cook, and suffered persistent pain in her arm.
Previously that fall, on September 21, 2004, Marriott had accepted Vanaria’s proposal (“Proposal”) to provide “unlimited snow plowing and unlimited sandings for snow season 2004-2005.” Vanaria in turn had then hired DeVincent to perform its snow removal duties. DeVincent admits that two of its employees were plowing the Marriott premises at the time of the incident.
Applestein filed the current action on December 20, 2005. Her three-count complaint alleges claims of negligence against each of the three defendants.

DISCUSSION

Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis u. Gen. Motors Corp., 410 Mass. 706, 716 (1991). While ordinarily courts refrain from using summary judgment to decide a claim of negligence, a court “may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994).

(1) The Claims Against DeVincent and Vanaria

DeVincent and Vanaria argue that Applestein cannot prove negligence as a matter of law because they owed her no duty of care. Applestein responds, however, that both defendants owed her a duty based on her status as third-party beneficiary of Marriott’s and DeVincent’s contracts with Vanaria. I find that Applestein is not an intended beneficiary of the defendants’ contracts and that she cannot recover on this basis.
In order to recover as a third-party beneficiary, the plaintiff must show that the original contracting parties intended that the plaintiff receive the benefit of their performance. Anderson v. Fox Hill Vill. Homeowners Corp., 424 Mass. 365, 366-67 (1997). Such intent, however, as drawn from the contract’s language and circumstances, must be “clear and definite.” Id. A plaintiff may thus enjoy the benefit of a contract without securing the right to enforce it. See Lakew v. Mass. Bay Transp. Auth,, 65 Mass.App.Ct. 794, 799 n.10 (2006). In Lakew, the Appeals Court refused to find that a tenant and its landlord, in negotiating security services for a parking garage, aimed to benefit the tenant’s employees injured on the premises. Id. at 798. The court found instead that the parties had intended to prevent vehicle theft and that the employees were merely incidental beneficiaries of the contract’s security provisions. Id. at 799. The court noted:
While such a purpose necessarily anticipates the interests of such third parties in avoiding loss, the purpose of the arrangement is not to confer on such parties a right to enforce the contract but instead to allocate between the direct contracting parties the risk of loss, and control over factors affecting such risk.

Id.

In its contract with Marriott, Vanaria agreed to provide snow removal services for the Marriott premises. Vanaria then hired DeVincent to perform the actual plowing and sanding work. As a patron of the Marriott facility, Applestein certainly benefits from these agreements. Yet nothing in the Proposal or in the summary judgment record indicates that the parties contracted specifically for the benefit of Marriott customers, or that they intended to bestow on Marriott guests the right to ensure that they performed their duties. Cf. Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) (indicating that defendant entered into a contract “for the benefit” of plaintiffs decedent). Applestein is instead merely an incidental beneficiary of the contracts between Marriott, Vanaria, and DeVincent.
Moreover, I find no evidence of any special relationship existing between Applestein and Vanaria or DeVincent that might establish a common-law duty of care. Cf. Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 792 (1988) (common carrier owes its passengers a common-law duty of care); Mullins v. Pine Manor Coll., 389 Mass. 47, 54 (1983) (school owes its students a duty of care). I find, therefore, that neither Vanaria nor DeVincent owed Applestein a duty of care *666 upon which she can base her negligence claim. Consequently, summary judgment must enter in their favor.

(2) The Claims Against Marriott

It is undisputed that as a landowner, Marriott owes its lawful entrants, including Applestein, a duty of reasonable care. Mounsey v. Ellard, 363 Mass. 693, 709 (1973). While Massachusetts courts do not hold landowners responsible for failing to remove a natural accumulation of ice, they may impose liability where “some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors.” Aylward v. McCloskey, 412 Mass. 77, 80 n.3 (1992). Marriott contends, however, that because Applestein has failed to show that Marriott altered any naturally accumulating ice, she is unable to prove that it breached its duty of care. I agree.
Marriott relies on Goulart v. Canton Hous. Auth., 57 Mass.App.Ct. 440, 443 (2003), for the proposition that treating ice does not ordinarily transform a natural accumulation of ice into an unnatural one. In that case, the Appeals Court held that a plaintiff could not recover for injuries she sustained when she fell on “wet, smooth ice” that the defendants had previously treated with salt. Id. at 444. The court found that where “it is clear that not every human act or failure to act — not even those which foreseeably increase the risk of mishap — transforms a natural accumulation of snow and ice into an unnatural one,” the defendants’ act of salting the ice did not convert its status from natural to unnatural. Id. at 443. Accordingly, the court refused to find the defendants liable. Id. at 444.
Applestein insists that Goulart does not apply to these facts because the ice in this case is not characterized as “smooth” and “wet.” Applestein has correctly identified the central impediment to her claim’s survival. The summary judgment record lacks any descriptive facts or observations from which ajuiy can assess the ice’s condition. This case is thus unlike those where courts have permitted juries to infer, based on a description of the ice, that the defendant salted the area to remedy an existing hazard. See Thornton v. First Nat’l Stores, Inc., 340 Mass. 222, 224 (1960) (describing “potted ice about an inch and a half to two and a half inches thick frozen solid to the step”). Further, although Applestein asserts generally that she “slipped on ice that had been inadequately sanded,” she is unable to determine whether there was ice on the spot where she fell. Applestein merely contends that “there was sand” in the parking area, not ice, and that the area in which she fell looked like “sanded ground.” (Applestein Dep. 23/9-13, 24/17.) Her conclusion that “there were two men close to my car sanding, so obviously we’re sanding an icy parking lot” is similarly unhelpful. (Applestein Dep. 22/15-17.) In the absence of a description of the alleged ice on which Applestein fell, I am unable to find that the ice accumulated naturally or unnaturally, let alone that the defendants’ actions modified its condition.
Applestein alternatively urges this court to find that a material issue of fact exists as to whether an unnatural accumulation of ice existed on the premises based on several external factors. Specifically, Applestein points to weather conditions conducive to refreezing and reports of heavy foot and vehicular traffic in the Marriott parking lot on the days leading up to the incident. Such factors may indicate that the condition has existed for an extended period of time. See Lanagan v. Jordan Marsh Co., 324 Mass. 540, 541 (1949). Courts may then consider this circumstantial evidence to determine that “the defendant, in the exercise of reasonable care, knew or should have known of the hazardous condition of its parking lot and should have taken reasonable precautions for the safely of its visitors.” Phipps v. Aptucxet Post #5988 VFW Bldg., 7 Mass.App.Ct. 928, 929 (1979); see id. (noting “imprints,” “footprints,” and frozen “ruts like automobile tire tracks” on the parking lot); see also Delano v. Garrettson-Ellis Lumber Co., 361 Mass. 500, 503 (1972) (noting “muddy ice, ‘with ruts three and four inches deep, covered and obscured by half an inch of snow’ ”).
Such evidence, however, only permits a jury to infer that the defendants failed to remove or altered an already existing accumulation of ice. Here, where there are no facts suggesting that Applestein actually fell on ice, such an inference is implausible. Applestein has therefore failed to show that Marriott changed the condition of naturally accumulating snow and ice in its parking lot. As a result, Applestein is unable to prove that Marriott breached its duty of reasonable care.
I therefore find that because Applestein is unable to prove an essential element of her negligence claim, Marriott is entitled to judgment as a matter of law.[2]

ORDER

It is hereby ORDERED that defendants Marriott’s, Vanaria’s and DeVincent’s Motions for Summary Judgment be ALLOWED.

Applestein suggests in her opposition brief that pursuant to the Proposal, Marriott had a duty to retain control over Vanaria and DeVincent and is therefore vicariously liable for their actions. I do not address this argument, however, as Applestein has failed to allege this claim as a count in her complaint.