Welch, Richard E., J.
INTRODUCTION
During winter, snow can fall generally over the Massachusetts landscape. Due to our northern climate or out of respect for our hardy and weathered citizens, Massachusetts courts have developed the “natural accumulation” doctrine. This doctrine holds that a landowner is not liable for virgin snow and ice that piles up on his property. The Massachusetts pedestrian must beware when walking on naturally formed snow and ice. But when that snow or ice is transformed by some human action or device, be it ruts from a snowplow, water channeled by a gutter, or even footprints creasing the snow, the landowner may be liable. Unfortunately, what constitutes a "natural” versus “unnatural” accumulation is not always clear cut. The cases that tackle this rather regional issue could fill a rather hefty volume. This case presents yet another chapter in the “natural accumulation” saga.
The plaintiff, Shannon B. Leaiy (Leary), filed this negligence action as a result of injuries she allegedly sustained when she slipped and fell on ice in a parking lot owned in part by the defendants, Mall at Liberty Tree LLC (Liberty Tree) and Simon Property Group, Inc. (Simon), and plowed by the defendant, Environmental Landscape Management (Environmental). This matter is before the court on the defendants’ Motions for Summary Judgment. For the reasons discussed below, the defendants’ Motions for Summary Judgment are ALLOWED.
BACKGROUND
The undisputed facts are as follows. On the morning of February 7, 2004, pursuant to a written snow removal agreement with the owners of the Liberty Tree Mall, Environmental plowed the mail’s parking lot. One week later, on February 14, 2004, Leary and her friend, Kimberly Ludwick (Ludwick), were walking through the lot toward the latter’s vehicle when Leary slipped on a patch of ice. The ice patch was connected to a pile of snow located two to three feet away and had formed when melted runoff from the snow pile refroze.
DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving parly to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The party moving for summary judgment bears the burden of affirmatively demonstrating that there are no genuine issues of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). To meet this burden, a moving party who would not bear the burden of proof at trial may either submit affirmative *491 evidence negating an essential element of the nonmov-ing party’s case or show that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To withstand summaiy judgment, the nonmoving party must articulate specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient. Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993).
Although the question of negligence is usually one of fact, a judge may decide the issue as a matter of law “when no rational view of the evidence permits a finding of negligence.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). To prevail on a claim of negligence, a plaintiff must show: “(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.” Nelson v. Mass. Port. Auth., 55 Mass.App.Ct. 433, 435 (2002) (citing Jorgensen v. Mass. Port. Auth., 905 F.2d 515, 522 (1st Cir. 1990)).
A landowner is not liable simply because a person slips on ice on his property. See Collins v. Collins, 301 Mass. 151, 152 (1938). Landowners in Massachusetts owe all lawful visitors to their property the duty of reasonable care. Mounsey v. Ellard, 363 Mass. 693, 707 (1973). They are not, however, required to be “insurers of their property,” and the “reasonable care in all the circumstances” standard is not intended to impose “unreasonable maintenance burdens.” Id. at 709. “(Ljandowners are liable only for injuries caused by defects existing on their property” and “the law does not regard the natural accumulation of snow and ice as an actionable property defect.” Aylward v. McCloskey, 412 Mass. 77, 79 (1992), citing Athas v. United States, 904 F.2d 79, 82 (1st Cir. 1990).[2]
“(I]n circumstances where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors, then a defect may exist, creating liability in the owner or occupier.” Aylward, 412 Mass. at 80 n.3. Liability may be imposed, for example, if the plaintiff falls on ice or snow that formed as a result of a structure or artificially created condition on the landowner’s property. See Baldassari v. Produce Terminal Realty Corp., 361 Mass. 738, 744 (1972) (liability could be imposed where the plaintiff fell on ice formed when melt water dripped through holes in roof left unrepaired by the defendant); Cooper v. Braver, Healey & Co., 320 Mass. 138, 139-40 (1946) (absent evidence of an artificial condition confining the water into a definite channel or accelerating its flow, liability could not be imposed where the plaintiff fell on ice formed on a public way when melt water flowed from a snow pile shoveled by the defendant on his premises). Liability may also be imposed if the plaintiff falls on ice or snow that, although it began as a natural accumulation, underwent a subsequent physical transformation. See Phipps v. Aptucxet Post #5988 V.F.W. Bldg. Assoc., 7 Mass.App.Ct. 928, 929 (1979) (liability could be imposed where the plaintiff fell on ice made uneven by footprints and tire ruts and left unaddressed by the defendant).
Nevertheless, “not every human act or failure to act — not even those that foreseeably increase the risk of mishap — transforms a natural accumulation of snow and ice into an unnatural one, so as to permit a finding of liability.” Goulart v. Canton Hous. Auth., 57 Mass.App.Ct. 440, 443 (2003). Liability does not attach, for example, “when a property owner removes a portion of an accumulation of snow or ice and a person is injured by slipping and falling on the remainder.” Sullivan v. Brookline, 416 Mass. 825, 828 (1994). This is because the snow or ice left in place remains a natural accumulation. Id. A landowner does not invite liability when he applies salt to an icy surface on his property. Goulart, 57 Mass.App.Ct. at 443 (citing as compatible with Massachusetts doctrine the reasoning laid out in Zielinski v. Szokola, 167 Mich.App. 611, 621 (1988), overruled on other grounds by Robinson v. Detroit, 231 Mich.App. 361 (1988) (“Salting does not create a hazard, instead it only alleviates, albeit temporarily, a hazard that already existed. For this reason, liability should not attach merely because the powerful forces of nature reassert themselves and a salted surface refreezes.’j). Absent evidence that he did something to confine melt water to a defined channel or accelerate its flow, neither does a landowner invite liability when he piles or rearranges snow — e.g., by shoveling — even if that snow later melts and refreezes causing plaintiffs fall. Cooper v. Braver, Healey & Co., 320 Mass. 138, 139-40 (1946).[3]
In the instant case, according to Leaiy, the snow bank which was the source of ice on which she fell was an unnatural accumulation, transformed from a natural accumulation by virtue of the fact that it was plowed pursuant to an agreement and intentionally deposited into areas of the parking lot reserved for vehicles. Implicit in this argument is the contention that the defendants had a duty to remove the snow from the lot altogether. Massachusetts law makes clear, however, that a natural accumulation does not become unnatural by virtue of being placed into piles, Cooper, 320 Mass. at 139-40, and there is no duty to remove a natural accumulation, Aylward v. McCloskey, 412 Mass. 77, 79-80 (1992).[4] Requiring a landowner to physically remove all snow that falls on his property would, in Massachusetts, amount to imposition of an unreasonable maintenance burden. See Mounsey v. Ellard, 363 Mass. 693, 709 (1973).[5]
Moreover, any intimation by Leary that the ice patch had become an unnatural accumulation due to the passage of time, see Sullivan v. Brookline, 416 Mass. *492 825, 829 n.3 (1994), is not supported by the Record. Although it is undisputed that Environmental had last plowed the mail’s parking lot one week prior to Leary’s fall, the Summary Judgment Record does not contain evidence concerning the point at which the plowed snow melted and refroze.[6] It is uncontested that the ice was formed when the snow pile naturally melted and unchannelled water ran down the pile and later froze on the parking lot. The ice was not later altered. This, as a matter of law, constitutes a “natural accumulation.”
As Leaiy has no reasonable expectation of proving the defendants’ breach of duty at trial, an essential element of her case, the defendants are entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Motions of the Defendants, Liberty, Simon, and Environmental, for Summary Judgment are ALLOWED.

As applied, Aylwards “no defect-no liability” rule in the context of natural accumulations of snow and ice extends to include service providers, such as snow removal contractors, in addition to owners and occupiers of real property. See, e.g., Philips v. Earl W. Kazis Assocs., Inc., No. MICV200603466C, 2008 WL 2895904, at *3 (Mass.Super. June 6, 2008) [24 Mass. L. Rptr. 271] (“Despite the fact that the long-standing natural accumulation rule was formulated in the context of claims against property owners, there is no reason snow removal contractors should be held to a different standard. To impose liability on a snow removal contractor for failure to remove natural accumulations of snow and ice would be contrary to the rationale of the longstanding rule, and would negate its purpose and intended effect.”).

For unpublished decisions of the Massachusetts Superior Court citing Cooper for the proposition, or as support for the proposition, that liability cannot be grounded in tort for a fall on ice that formed when run-off from snow piled by the defendant refroze, see, e.g., Deloury v. Commons Shopping Ctr. LP, No. 990638, 2002 WL 1008693, at *1 (Mass.Super. Apr. 16, 2002) [14 Mass. L. Rptr. 485], and McDonald v. Zaniboni, No. 000947B, 2002 WL 58137, at *2, *3 (Mass.Super. Jan. 9, 2002) [14 Mass. L. Rptr. 136],

Leaiy relies on Rossi v. Oceanview Country Club, No. 9450, 1997 WL 733844, at *3 (Mass.App.Div. Nov. 21, 1997), for the proposition that snow removal may be conducted in such a way as to permit the inference that it created an unnatural accumulation. In Rossi, the Massachusetts Appellate Division found that “[a] reasonable inference [could] be drawn from the facts set forth in the answers to interrogatories and affidavits that the plaintiffs fall was caused by an unnatural accumulation of snow which the defendant’s employee negligently created by sweeping all of the snow from the platform onto the steps as the reception guests were exiting the premises.” Id. The court further found that “[t]he persuasiveness of the defendant’s contrary conclusion, that any snow disturbed by its employee was negligible and did not alter the natural state of the heavy snowfall deposited by the gusting winds of the ongoing blizzard, did not entitle the defendant to the allowance of its Rule 56 motion.” Rossi, 1997 WL 733844, at *3. In the present matter, however, the Supreme Judicial Court has already decided that tort liability should not attach as a result of the defendants’ actions. See Coopero. Braver, Healey & Co., 320 Mass. 138, 139-40(1946).

Although Leaiy appears to argue that large retail facilities owe a greater duty of care than individual homeowners, she falls to cite any authority for the proposition that the duty of care owed by such facilities is anything other than the reasonable care standard articulated in Mounsey.

At their depositions, neither Leaiy nor Ludwick remembered seeing frozen footprints or ruts in the ice, evidence which, had it existed, might have enabled the finder of fact to infer the length of time the ice had been present. Ludwick stated that she had no way of knowing how long the ice had been there and was unsure whether it had formed while she and Leaiy were in the mall. Ludwick, however, had no memory of the ice patch being there when she initially parked the car. For her part, Leary did not remember having any trouble traversing the lot on her way into the mall, estimating that it took her about a minute to do so.